IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RUSSEL TEAGUE,<br><br>              Plaintiff,<br><br>v.<br><br>OFFICER BURK CHRISTIAN and CITY OF ST. GEORGE,<br><br>              Defendants. | **MEMORANDUM DECISION AND ORDER:**<br>• **GRANTING [20] DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND**<br>• **DENYING [21] DEFENDANTS' MOTION FOR SANCTIONS**<br><br>Case No. 4:18–cv–00052 DN PK<br><br>District Judge David Nuffer |

Defendants Officer Burk Christian ("Officer Christian") and the City of St. George ("the City") ( collectively "Defendants") move for summary judgment ("Motion for Summary Judgment")[1] on all three causes of action contained in Plaintiff Russel Teague's ("Plaintiff") Complaint.[2] Plaintiff opposes the motion,[3] and Defendants have replied[4] in support. In conjunction with filing the Motion for Summary Judgment, Defendants also filed the Rule 11 Motion for Sanctions ("Motion for Sanctions").[5] Plaintiff opposes[6] that motion and Defendants have replied[7] in support of it.

---

[1] Defendants' Motion for Summary Judgment, docket no. docket no. 20, filed December 24, 2018.

[2] Complaint, docket no. 2, filed August 3, 2018.

[3] Opposition to Motion for Summary Judgment ("Opposition"), docket no. 41, filed February 5, 2019.

[4] Defendants' Reply in Support of Motion for Summary Judgment ("Reply"), docket no. 44, filed February 15, 2019.

[5] Defendants' Motion for Rule 11 Sanctions, docket no. 21, filed December 24, 2018.

[6] Memorandum in Opposition to Defendants' Rule 11 Motion, docket no. 32 filed January 7, 2019.

[7] Defendants' Memorandum in Reply to Plaintiff's Memorandum in Opposition to Defendants' Rule 11 Motion, docket no. 37, filed January 21, 2109.

Plaintiff's first two causes of action are brought under 42 U.S.C. § 1983. Here, no reasonable finder of fact could conclude from the undisputed facts that Defendants violated Plaintiff's constitutional rights. Summary judgment is appropriate for Defendants on the first two causes of action of Plaintiff's Complaint. Summary Judgment for Defendants is also appropriate on Plaintiff's third cause of action for injunctive relief.

And although it is not the subject of the Motion for Summary Judgment, Plaintiff's Complaint also contains a claim for class certification. Because Plaintiff's causes of action fail, Plaintiff's class certification is moot. For the reasons stated in the following memorandum decision, the Motion for Summary Judgment is GRANTED.

Finally, the circumstances here make it difficult to conclude that Plaintiff's counsel should be subject to sanctions under Fed. R. Civ. P. 11. Defendants' Motion for Sanctions is DENIED.

**Contents**
STATEMENT OF UNDISPUTED FACTS ............................................................................... 2
STANDARD OF REVIEW ...................................................................................................... 10
DISCUSSION ............................................................................................................................ 11
    Plaintiff's First Cause of Action Fails Because Officer Christian had Probable Cause to Arrest Plaintiff ................................................................................................... 12
    Because Officer Christian Had Probable Cause to Arrest Plaintiff, Plaintiff's Cause of Action for Malicious Prosecution Also Fails ........................................................... 16
    Because Plaintiff Cannot Prevail on His § 1983 Causes of Action, He Cannot Seek Injunctive Relief and His Class Certification is Moot. ........................................ 17
    Plaintiff's Counsel Will Not Be Sanctioned at This Time............................................... 17
ORDER ...................................................................................................................................... 19

## STATEMENT OF UNDISPUTED FACTS[8]

1.      On March 25, 2016, Plaintiff Russel Teague was arrested by St. George Police Officer Burkeley Christian for operating under the influence, pursuant to Utah Code § 41-6a-

---

[8] The statement of undisputed facts here is taken in its entirety from Defendants' Motion for Summary Judgment. Plaintiff did not dispute any of Defendants' undisputed facts. Opposition at 2.

2

502. Officer Stan Thompson and Officer Joseph Watson, who also work for the St. George Police Department, were also present.[9]

2. At or around 11:48 am on the above date, Plaintiff rear-ended a vehicle driven by Donna Mae Sires. Plaintiff hit Ms. Sires when she was stopped at a red light at the intersection of Sunset Boulevard and Dixie Downs Road in St. George, Utah.[10]

3. Ms. Sires and Plaintiff got out of their vehicles, and Plaintiff approached her, swaying as he walked as if he were intoxicated.[11]

4. The police reached the scene of the accident shortly thereafter. Upon arrival, Officer Christian and Officer Thompson observed that Plaintiff and his vehicle matched the description of a male who witnesses reported was driving intoxicated and recklessly and who was involved in a hit-and-run earlier that same day.[12]

5. When Plaintiff rear-ended Ms. Sires, he was driving a white 1994 Chevrolet K1500 pickup truck. Plaintiff is a white male with white hair, and he was wearing a blue shirt and had sunglasses on his person.[13]

6. Moments before the accident, the police dispatcher advised Officer Thompson that a reckless driver in an older white Chevrolet truck had been reported on Sunset Boulevard. Officer Thompson was attempting to locate the suspect vehicle when dispatch informed him that it had just been involved in an accident near the intersection of Sunset Boulevard and Dixie Downs Drive.[14]

---

[9] Motion for Summary Judgment ¶ 1 at 3-4.
[10] *Id*. ¶ 2 at 4.
[11] *Id*. ¶ 3 at 4.
[12] *Id*. ¶ 4 at 4.
[13] *Id*. ¶ 5 at 4.
[14] *Id*. ¶ 6 at 5.

7. Approximately 42 minutes before the accident, at 11:06 am, dispatch advised Officer Christian that a hit-and-run had been reported at Albertson's Sav-On Pharmacy on 745 N. Dixie Drive in St. George, Utah, which was about 0.2 miles from where Plaintiff rear-ended Ms. Sires ("the rear-end collision").[15] Dispatch provided Officer Christian with the following details:

    a. A witness reported that a male had fallen asleep in his vehicle while he was parked in the pharmacy drive-through. The male woke up after approximately five minutes, at which point he accelerated, hit another vehicle, and then drove away on Sunset Boulevard.[16]

    b. The witness described the suspect as a white male with white hair who was wearing a blue shirt and sunglasses. As stated above, Plaintiff matched this description exactly.[17]

    c. The witness described the suspect's vehicle as a white Chevrolet pickup truck, which is what Plaintiff was driving.[18]

    d. The witness also provided the truck's license plate number, which returned as being registered to Plaintiff.[19]

8. Dispatch also informed Officer Thompson of the hit-and-run after he arrived at the scene of the rear-end collision but before Officer Christian arrested Plaintiff.[20]

---

[15] *Id.* ¶ 7 at 5.
[16] *Id.*
[17] *Id.*
[18] *Id.* ¶ 7 at 6.
[19] *Id.*
[20] *Id.* ¶ 8 at 6.

9. Dispatch also advised Officer Christian and Officer Thompson that it received a complaint earlier in the day of a male matching Plaintiff's description who was acting intoxicated at a Harmons grocery store in Ivins, Utah. The male left in a white Chevrolet pickup truck with a license plate registered to Plaintiff.[21]

10. Officer Watson, Officer Thompson, and Officer Christian arrived at the scene of the rear-end collision between Plaintiff and Ms. Sires, in that order.[22]

11. When Officer Thompson arrived, he made contact with Plaintiff, who was sitting in the driver's seat of his truck. Plaintiff appeared very lethargic and his speech was slow and interrupted by long pauses. When Officer Thompson asked him for his driver's license, registration, and proof of insurance, Plaintiff laid his head back and closed his eyes as if he were resting. Officer Thompson asked him again for his documents, and Plaintiff retrieved them. Officer Thompson then noticed that the bottom of a brown glass bottle was sticking out from under the seat, which he believed to be a beer bottle.[23]

12. Plaintiff exited his vehicle and handed Officer Thompson several papers along with his driver's license. Plaintiff appeared to have a difficult time keeping his balance as he stood in the roadway, and he repeatedly swayed back and forth and closed his eyes.[24]

13. Officer Christian asked Plaintiff if he was injured during the accident, and Plaintiff replied that he was not. Plaintiff also had no obvious signs of injury.[25]

---

[21] *Id.* ¶ 9 at 6.

[22] *Id.* ¶ 10 at 6.

[23] *Id.* ¶ 11 at 6-7.

[24] *Id.* ¶ 12 at 7.

[25] *Id.* ¶ 13 at 7.

14. Officer Thompson and Officer Christian escorted Plaintiff to the sidewalk by a gas station because it was hazardous for them to remain in the road. While he was walking, Plaintiff was staggering from front to back and almost fell over.[26]

15. Officer Christian continued talking to Plaintiff on the sidewalk, and Plaintiff admitted he rear-ended Ms. Sires.[27]

16. Officer Christian did not detect the odor of alcohol on Plaintiff's breath and he was not slurring his words, but more than once he closed his eyes and began to fall over. As Plaintiff continued to explain the accident, he rocked back and forth on his heels, almost falling backwards. Officer Christian had to steady Plaintiff several times to prevent him from falling.[28]

17. Based upon Officer Christian's observations of Plaintiff's behavior, and his training and experience, he believed that Plaintiff was under the influence of a narcotic or other drug. Not only was Plaintiff unsteady on his feet and nearly fell over multiple times, but Plaintiff and his vehicle matched the description of a hit-and-run and drunk driving suspect.[29]

18. Officer Christian informed Plaintiff he was not free to leave and read him his Miranda Rights. Plaintiff stated that he understood his rights and agreed to answer Officer Christian's questions.[30]

19. Plaintiff denied consuming alcohol but stated that he takes Ambien, which Officer Christian knew to be a sedative used to treat insomnia. Plaintiff denied taking any Ambien that

---

[26] *Id*. ¶ 14 at 7.

[27] *Id*. ¶ 15 at 7.

[28] *Id*. ¶ 16 at 8.

[29] *Id*. ¶ 17 at 8.

[30] *Id*. ¶ 18 at 8.

day, but he advised that he took his normal 600mg dose of Gabapentin that morning, which he explained is for nerve damage.[31]

20. Officer Christian then informed Plaintiff that he wanted to administer field sobriety tests. Officer Christian was and remains certified to conduct field sobriety tests, including the horizontal gaze nystagmus ("HGN") test, the walk-and-turn test, and the one-leg stand test.[32]

21. Prior to beginning the first test, Plaintiff was rocking back and forth like he was off balance, and he closed his eyes.[33]

22. The first test that Officer Christian administered was the HGN test. He explained the test to Plaintiff and asked him if he had any head injuries, vision problems, or medical problems. Plaintiff replied that he did not, except that he had surgery on a disc in his back over a year ago.[34]

23. The HGN test revealed signs indicative of intoxication. There are six "clues" for HGN, three for each eye: Lack of smooth tracking, sustained nystagmus at maximum deviation, and nystagmus prior to 45 degrees.50 Both of Plaintiff's eyes jumped and skipped while following Officer Christian's finger, and both eyes showed each type of horizontal nystagmus. Accordingly, Plaintiff exhibited all six signs of HGN.[35]

24. Officer Christian repeated each component of the test with the same results.[36]

---

[31] *Id.* ¶ 19 at 8.

[32] *Id.* ¶ 20 at 8-9.

[33] *Id.* ¶ 21 at 9.

[34] *Id.* ¶ 22 at 9.

[35] *Id.* ¶ 23 at 9.

[36] *Id.* ¶ 24 at 9.

25. After the test was finished, Plaintiff swayed forward and back approximately a foot to the front and a foot to the back. Officer Christian and Officer Watson had to steady him to prevent him from falling.[37]

26. Officer Christian then escorted Plaintiff to a painted line outside of the gas station to do the walk-and-turn test. The line was straight, and the ground was hard, flat, and smooth.[38]

27. Plaintiff swayed back and forth while leaning back slightly as he was walking over to the line, and Officer Christian had to hang on to his shoulders to guide him to the line.[39]

28. Plaintiff had difficulty following Officer Christian's instructions for the test. Plaintiff started the test without being asked to, despite explicit directions to the contrary, and Plaintiff could not get into the "starting position" as instructed. He lost his balance while attempting to do so, swaying left and right and throwing his arms up to regain his balance. Officer Christian gave him another opportunity to get into the starting position, but Plaintiff was unable to and needed to be steadied by Officer Christian to prevent him from falling. Officer Christian then stopped the test because he felt it was unsafe for Plaintiff to continue.[40]

29. Based upon Officer Christian's training and experience, Plaintiff's inability to follow instructions and his lack of coordination were signs of intoxication.[41]

30. The third test that Officer Christian administered was the one-leg stand test. While Officer Christian was demonstrating the test, Plaintiff raised his leg and started attempting the test despite explicit instructions to not start until the demonstration was over. Plaintiff then

---

[37] *Id*. ¶ 25 at 10.

[38] *Id*. ¶ 26 at 10.

[39] *Id*. ¶ 27 at 10.

[40] *Id*. ¶ 28 at 10.

[41] *Id*. ¶ 29 at 11.

lost his balance and had to put his foot down. Officer Christian asked Plaintiff to return to the starting position, and Plaintiff complied but almost fell backwards. Officer Christian then discontinued the test for Plaintiff's safety.[42]

31. Based on Officer Christian's training and experience, Plaintiff's inability to follow his instructions and his loss of balance – particularly when he had both feet on the ground while in the starting position, were indications of intoxication.[43]

32. Officer Christian asked Plaintiff to blow into a Portable Breath Test, which indicated his blood alcohol concentration was .000.[44]

33. Although Plaintiff's BAC was .000, Officer Christian believed he was under the influence of his medication or another drug because he failed all of the other field sobriety tests. Officer Christian therefore arrested Plaintiff and transported him to the Washington County Correctional Facility.[45]

34. Plaintiff gave his consent for a blood draw, which occurred at a hospital. Two certified phlebotomists were unable to draw any blood, but Plaintiff consented to a urine sample, which was taken.[46]

35. On April 7, 2016, less than two weeks after Plaintiff was arrested, the City of St. George filed an information charging Plaintiff with operating under the influence of alcohol and or drugs[47] and a traffic infraction.[48]

---

[42] *Id*. ¶ 30 at 11.

[43] *Id*. ¶ 31 at 11.

[44] *Id*. ¶ 32 at 11.

[45] *Id*. ¶ 33 at 11-12.

[46] *Id*. ¶ 34 at 12.

[47] Motion for Summary Judgment, Exhibit N, Information, docket no. 20-1, filed December 24, 2019.

[48] Motion for Summary Judgment ¶ 35 at 12.

36. The urine sample was sent to the Utah Department of Health, Bureau of Forensic Toxicology where it was analyzed for certain prescription drugs. The analysis was completed on June 3, 2016 and was negative.[49]

37. At the time the urine sample was analyzed, there was no test that could detect Gabapentin in blood or urine. Additionally, the test utilized by the Bureau of Forensic Toxicology would only return positive for Ambien if levels above a therapeutic dose were present in the blood or urine sample. In any event, urine is a less accurate medium than blood when determining intoxication, and if an individual had recently ingested medication, it might not show up in their urine.[50]

38. On July 27, 2016, the driving under the influence charge against Plaintiff was dismissed.[51]

## STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[52] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[53] In determining whether there is a genuine dispute as to material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[54] The

---

[49] Motion for Summary Judgment ¶ 36 at 12.

[50] *Id*. ¶ 37 at 12-13.

[51] *Id*. ¶ 38 at 13.

[52] Fed. R. Civ. P. 56(a).

[53] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[54] *Id.*

moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[55]

## DISCUSSION

Plaintiff's Complaint contains three causes of action: (1) a cause of action under 42 U.S.C. § 1983 for "illegal detention" against Officer Christian;[56] (2) a cause of action under 42 U.S.C. § 1983 for malicious prosecution against the City;[57] and (3) a cause of action for injunctive relief seeking an order against the City.[58] Plaintiff's Complaint also asks for class certification.[59]

Defendants argue that the first cause of action fails because Officer Christian had probable cause to arrest Plaintiff and therefore no constitutional violation occurred. Defendants also argue that the doctrine of qualified immunity applies and shields Officer Christian from this cause of action.[60] Because the first cause of action fails, Defendants also argue that the second cause of action also fails.[61] Without these two causes of action, Defendants contend that Plaintiff is not entitled to his third cause of action for injunctive relief.[62] Each of these causes of action is discussed in turn.

---

[55] *Id.* at 670-71.

[56] Complaint ¶¶ 37-51 at 4-5.

[57] *Id.* ¶¶ 52-62 at 5-6.

[58] *Id.* ¶ 63 at 6.

[59] *Id.* ¶¶ 64-70 at 7.

[60] Motion for Summary Judgment at 14.

[61] *Id.* at 22-23.

[62] *Id.* at 23-24.

## Plaintiff's First Cause of Action Fails Because Officer Christian had Probable Cause to Arrest Plaintiff

As a preliminary matter, Defendants raise the issue that Plaintiff fails to explicitly identify which constitutional right Officer Christian is to have violated in the first cause of action for "illegal detention."[63] Nevertheless, Defendants construe Plaintiff's first cause of action as one alleging a Fourth Amendment violation where Officer Christian allegedly did not have probable cause to arrest Plaintiff.[64]

Plaintiff appears to acknowledge that his first cause of action is one for a violation of his Fourth Amendment rights.[65] The operative question then is whether Officer Christian had probable cause to perform the arrest. The following analysis will therefore focus on whether a reasonable fact finder could conclude that Officer Christian lacked probable cause to arrest Plaintiff, therefore violating Plaintiff's rights under the Fourth Amendment.

Defendants argue that Officer Christian had probable cause to arrest Plaintiff for a violation of Utah's statute that prohibits driving under the influence of alcohol or drugs.[66] Because Officer Christian had probable cause of to arrest Plaintiff, Defendants argue that Officer Christian did not violate Plaintiff's Fourth Amendment rights and Plaintiff cannot bring a § 1983 cause of action against Officer Christian.[67] And because Officer Christian did not violate Plaintiff's Fourth Amendment rights, Defendants also argue that the doctrine of qualified immunity shields Officer Christian from Plaintiff's first cause of action.[68] In response, Plaintiff

---

[63] *Id.* at 15 n. 81.

[64] *Id.*

[65] Opposition at 8-9.

[66] Motion for Summary Judgment at 19.

[67] *Id.* at 16.

[68]. *Id.* at 15.

12

argues that any probable cause dissipated after Plaintiff provided Officer Christian with a breath sample indicating a blood alcohol content of .00.[69]

The United States Court of Appeals for the Tenth Circuit has determined that if probable cause existed to perform a warrantless arrest, that arrest cannot be the subject of a § 1983 action.[70] Probable cause to arrest is determined by the totality of the circumstances "confronting the . . . officer" at the time of the arrest.[71] The Tenth Circuit has recognized that probable cause to arrest a defendant for driving under the influence exists when the totality of circumstances confronting an officer includes a defendant's erratic driving and the failure to pass field sobriety tests.[72] And if the challenged action is an arrest, police officers may enjoy the protection of qualified immunity unless they violate an individual's clearly established constitutional rights in such a manner that it would be "sufficiently clear" to a reasonable officer that his or her conduct was unlawful.[73]

Here it is undisputed that Officer Christian arrested Plaintiff for violating Utah Code Ann. § 41-6a-502,[74] which specifies that:

> A person may not operate or be in actual physical control of a vehicle within this state if the person . . . is under the influence of alcohol, *any drug*, or the combined influence of alcohol and any drug *to a degree that renders the person incapable of safely operating a vehicle*.[75]

It is also undisputed that Officer Christian was confronted by the following circumstances:

---

[69] Opposition at 8-9

[70] *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

[71] *Summers v. Utah,* 927 F.2d 1165, 1166 (10th Cir. 1991).

[72] *Carlsen v. Duron*, 229 F.3d 1162 (10th Cir. 2000).

[73] *Anderson v. Creighton,* 483 U.S. 635, 638-640 (1987).

[74] Undisputed Material Facts, *supra*, ¶ 1.

[75] Utah Code Ann. § 41-6a-502 (2015) (emphasis added).

13

- After reaching the scene of a traffic accident involving plaintiff, Officer Christian observed that Plaintiff and his vehicle matched the description of a male who witnesses reported was *driving intoxicated and recklessly* and who was involved in a hit-and-run earlier that same day.[76]
- Officer Christian had also been informed by dispatch that it had received a complaint earlier in the day of a male matching Plaintiff's description who was acting intoxicated at a Harmons grocery store in Ivins, Utah. The male left in a white Chevrolet pickup truck with a license plate registered to Plaintiff.[77]
- Although Officer Christian did not detect the odor of alcohol on Plaintiff's breath and Plaintiff was not slurring his words, more than once Plaintiff closed his eyes and began to fall over. As Plaintiff continued to explain the accident, he rocked back and forth on his heels, almost falling backwards. Officer Christian had to steady Plaintiff several times to prevent him from falling.[78]
- Plaintiff denied consuming alcohol but stated that he takes Ambien, although he also denied taking a dose that day. Plaintiff did inform Officer Christian that he took a normal 600mg dose of Gabapentin that morning for nerve damage.[79]
- Prior to Officer Christian administering an HGN test, Officer Christian asked if Plaintiff had any head injuries, vision problem, or medical problems. Plaintiff

---

[76] Undisputed Material Facts, *supra*, ¶ 4.
[77] *Id.* ¶ 9.
[78] *Id.* ¶ 16.
[79] *Id.* ¶ 19.

- replied that he did not, except that he had surgery on a disc in his back over a year ago.[80]
- The HGN test revealed six signs indicative of intoxication *both* times Officer Christian administered the HGN test.[81]
- Plaintiff also had difficulty with the walk-and-turn test including losing his balance.[82]
- Plaintiff had similar issues with balance while performing the one-leg stand test.[83]

The circumstances the Tenth Circuit recognizes as supporting probable cause to arrest an individual for driving under the influence—erratic driving and failing a field sobriety test—clearly exist here. Defendant's argument that probable cause was extinguished after Plaintiff blew a .00 on the breathalyzer[84] is not determinative. The undisputed facts demonstrate that, based on the circumstances confronting him at the time, Officer Christian arrested Plaintiff for a violation of Utah Code Ann. § 41-6a-502 not for alcohol influence, but *drug influence*.[85]

Any reasonable finder of fact could readily conclude that Officer Christian had probable cause to arrest Plaintiff for a violation of Utah Code Ann. § 41-6a-502. No constitutional violation occurred here. The arrest cannot be the subject of Plaintiff's 1983 claim and Officer Christian is entitled to immunity. Summary judgment on the first cause of action is appropriate.

---

[80] *Id.* ¶ 22.

[81] *Id.* ¶¶ 23-24.

[82] *Id.* ¶ 26.

[83] *Id.* ¶ 30.

[84] Opposition at 8.

[85] Undisputed Material Facts, *supra*, ¶ 33.

## Because Officer Christian Had Probable Cause to Arrest Plaintiff, Plaintiff's Cause of Action for Malicious Prosecution Also Fails

The conclusion that no reasonable finder of fact could conclude that Officer Christian lacked probable cause to arrest Plaintiff bears directly on the viability of Plaintiff's second cause of action for malicious prosecution. "State law," according to the Tenth Circuit, is "the starting point for analyzing a Fourth Amendment claim for malicious prosecution under § 1983."[86] In Utah, a claim for malicious prosecution consists of the following elements:

> (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.[87]

The Tenth Circuit recognizes that "probable cause is an essential element of the tort of malicious prosecution under Utah tort law."[88] "The existence of probable cause bars a Section 1983 claim for malicious prosecution."[89]

Defendants argue that the malicious prosecution claim fails because Officer Christian had probable cause to arrest Plaintiff.[90] In response, Plaintiff advances a confusing argument that the City's practice of charging individuals for DUI before receiving lab test results represents malicious prosecution because negative test results extinguish probable cause.[91] But probable cause to charge Plaintiff is determined as of the time of the arrest, and subsequent events do not undermine the validity of the probable cause.[92] The above determination that the undisputed

---

[86] *Erickson v. Pawnee Cty. Ed. Cty. Comm'rs*, 263 F.3d 1151, 1154 (10th Cir. 2001).

[87] *Donaldson v. Stoker*, No. 2:16-CV-784, 2018 WL 1026378, at *4 (D. Utah Feb. 21, 2018).

[88] *Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996).

[89] *Calhoun v. Buck,* 371 F. Supp. 3d 1008, 1015 (D. Utah 2019).

[90] Motion for Summary Judgment at 22.

[91] Opposition at 3.

[92] *Summers,* 927 F.2d at 1166–67 (internal citations omitted).

facts demonstrate that Officer Christian had probable cause to arrest Plaintiff is not undermined by subsequent negative test results.

Because Probable cause existed to arrest Plaintiff, it was permissible for the City to charge him. Plaintiff cannot prove an essential element of his malicious prosecution cause of action and summary judgment for Defendants on this cause of action is appropriate.

### Because Plaintiff Cannot Prevail on His § 1983 Causes of Action, He Cannot Seek Injunctive Relief and His Class Certification is Moot.

Plaintiff's third cause of action seeks injunctive relief against Defendants.[93] Specifically, the Complaint requests "an order where St. George is enjoined from prosecuting DUI charges against an individual without first obtaining the results from an outstanding blood or urine tests."[94] The claim for injunctive relief is dismissed. Injunctive relief is a remedy, not an independent cause of action. Injunctive relief is available as a remedy only where a party prevails on a separate legal theory. Because Plaintiff's two causes of action under § 1983 fail, his request for injunctive relief fails as well.

Plaintiff also seeks in his Complaint to pursue his causes of action as the representative of a class of similarly situated plaintiffs.[95] But because Plaintiff's causes of action claims are dismissed, his requested class certification is moot.

### Plaintiff's Counsel Will Not Be Sanctioned at This Time

As a final matter, Defendants argue that Plaintiff's counsel should be sanctioned and attorney fees should be awarded to Defendants "because Plaintiff's counsel made several material allegations with the knowledge that they do not have any evidentiary support, or at a

---

[93] Complaint ¶63 at 6.

[94] *Id.*

[95] *Id.* ¶¶64-70 at 7.

minimum, without conducting a reasonable inquiry into the facts" and because "the legal theories Plaintiff's counsel advances have no support in the law."[96]

In the Tenth Circuit, "sanctions under Rule 11 are discretionary; not mandatory."[97] Here much of Defendants' argument in support of sanctions is based on assumptions of what Plaintiff's counsel *could* have done to avoid filing a Complaint that Defendants characterize as frivolous and unsupported by the law. Although the theory of the Complaint is a weak one—which is why summary judgment will enter—Plaintiff mounted a challenge to the basis of his arrest and decision to file an information against him.

It is notable here that Defendants did not challenge the validity of Plaintiff's claims in a motion to dismiss. Instead Defendants provided Plaintiff with initial disclosures and then moved for summary judgment based on the information contained in those disclosures. Now Defendants seek to impose sanctions by alleging that Plaintiff was—or should have been—on notice of that information before it was provided in initial disclosures.

On its face, this does not appear to be an appropriate scenario to impose sanctions on Plaintiff's counsel. However, the decision not to impose sanctions does not mean that Plaintiff's counsel escapes scrutiny. It should be noted that Plaintiff's counsel previously filed a similar sort of case—*Leon v. Summit County* 2:17-cv-00165-DN-EJF—that was dismissed on a motion to dismiss and that dismissal was affirmed by the Tenth Circuit.[98] The experience of losing these cases should mean that Plaintiff's counsel is now readily familiar with what constitutes a legitimate, cognizable claim under § 1983.

---

[96] Motion for Sanctions at 5-6.
[97] *Lundahl v. Home Depot, Inc.,* 594 F. App'x 453, 456 (10th Cir. 2014).
[98] *Leon v. Summit County.*, No. 17-4205, 2018 WL 6251557, at *1 (10th Cir. Nov. 28, 2018).

Allegations of constitutional violations by law enforcement and prosecutors are serious. Plaintiff's counsel's further filing of these suits may be met with remedies under Rule 11(c)(3) which provides a district court with the authority to address the issue of sanctionable conduct on its own initiative.[99] Careful attention will be paid to any similar future suits, but the present Motion for Sanctions is DENIED.

**ORDER**

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgement[100] is GRANTED. Plaintiff's Complaint is dismissed with prejudice.

IT IS FURTHER ORDERED that Defendants' Motions for Sanctions[101] is DENIED.

The Clerk is directed to close the case.

Signed September 25, 2019.

BY THE COURT

_David Nuffer_
David Nuffer
United States District Judge

---

[99]. Fed. R. Civ. P. 11(c)(3).

[100] Defendants' Motion for Summary Judgment, docket no. docket no. 20, filed December 24, 2018

[101] Defendants' Motion for Rule 11 Sanctions, docket no. 21, filed December 24, 2018.